```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

ROBERTO DEJESUS,

             Plaintiff,

         v.                          12 CV 4678 (JGK) (DCF)

C.O. LARON REESE,

             Defendant.

------------------------------x
                                     New York, N.Y.
                                     April 15, 2013
                                     10:11 a.m.

Before:

                 HON. DEBRA C. FREEMAN

                                     Magistrate Judge

                     APPEARANCES

ROBERTO DEJESUS
    Pro Se Plaintiff

NEW YORK CITY LAW DEPARTMENT
    Attorney for Defendant
BY:  PATRICK N. BEATH
```

1              (In chambers)
2              THE COURT:  Good morning.  It's Judge Freeman.  Sorry
3     about the delay.  Do I have Mr. Dejesus?
4              MR. DEJESUS:  Yes, ma'am.
5              THE COURT:  Who do we have for defendant?
6              MR. BEATH:  Patrick Beath, your Honor.
7              THE COURT:  Okay.  Make sure.  B-E-A-T-H?
8              MR. BEATH:  That's correct.
9              THE COURT:  I do have a court reporter here.  And
10    Mr. Beath if you would be kind enough to order a copy of this
11    transcript and provide a copy to Mr. Dejesus, I'd appreciate
12    that.
13             MR. BEATH:  Will do.
14             THE COURT:  Thank you.  Okay.
15             So this case was referred to me by Judge Koeltl, who
16    told me that you may have been engaging in some settlement
17    conversations; is that right?
18             MR. BEATH:  Mr. Dejesus has made an initial demand.
19    At this point we are in the process of getting some authority
20    to be able to engage in settlement discussions more fully.
21             THE COURT:  Okay.  I've read the complaint.  I've read
22    through the complaint.  It seems that these allegations are
23    fairly serious.  I'm happy to help with settlement if I can.
24             I'm also happy to entertain an application by
25    plaintiff for counsel if you've been trying to find an attorney

1    and you have not been successful on your own, Mr. Dejesus, and
2    you think you'd benefit from having someone advise you.
3            MR. DEJESUS:  Yes, your Honor.
4            THE COURT:  Have you made an application for counsel?
5            MR. DEJESUS:  Not yet, your Honor.  But I will soon.
6            THE COURT:  All right.  Have you made efforts to find
7    a lawyer on your own?
8            MR. DEJESUS:  I'm in the process of doing that right
9    now.
10           THE COURT:  Okay.  What was the settlement demand?
11           MR. DEJESUS:  Your Honor I requested $20,000 which
12   would be fair for me and the defendant.
13           THE COURT:  Okay.  What about discovery?  Has anything
14   been done yet?
15           MR. BEATH:  As of yet, nothing has been done.  We
16   anticipate sending our 32.2 disclosures by the week's end,
17   probably before then, but certainly no later than Friday of
18   this week.
19           THE COURT:  In terms of the settlement process would
20   that benefit from any early discovery?
21           MR. BEATH:  I think -- you know insofar as defendants
22   can send medical records and the use of force report to
23   plaintiff, you know, he would see the investigation that was
24   already done, the conclusions that were made, and also the
25   specific nature of the injury, although he is purporting that

1   the injury is of a certain nature.  But he'll see what the
2   medical records show.  That could potentially aid settlement, I
3   think.  We'd all be on the same page about the nature of the
4   injury and the incident.
5           THE COURT:  Give me some idea of defendant's side of
6   the story just so I have some context.
7           MR. BEATH:  Sure.  So basically on the date of
8   incident the defendant Reese was escorting Mr. Dejesus to the
9   shower area.  During that escort Mr. Dejesus kind of made some
10  threats to Officer Reese, then turned around and, as Officer
11  Reese describes, lunged at him with an open mouth making
12  Officer Reese believe he was trying to bite him.  Officer Reese
13  then kind of pushed him forward into the shower area and locked
14  the shower area and then called for a probe team to extricate
15  him from the area.  It was during that push into the shower
16  area it sounds like Mr. Dejesus hit his head causing a
17  laceration.
18          THE COURT:  Well according to Mr. Dejesus, he says
19  that his head was repeatedly rammed into the wall.  I guess
20  defendant just denies that that happened.
21          MR. BEATH:  That's right.  Denies that that happened.
22  During the department of corrections use of force investigation
23  it appears that Mr. Dejesus made a statement to the
24  investigating officer that he didn't like the way Officer Reese
25  was escorting him to the shower, that he turned toward him, and

1   that Officer Reese pushed him into the shower causing
2   Mr. Dejesus to bump his head.  Obviously Mr. Dejesus doesn't
3   admit in there that he lunged at Officer Reese.  That's going
4   to be a dispute of fact.  But according to this verbal
5   statement that's part of the investigation, it's consistent
6   with what Officer Reese is saying, that Officer Reese pushed
7   him into the shower and that's where he bumped his head.
8           THE COURT:  What does the medical record show?
9           MR. BEATH:  The medical record shows that there is a
10  minor laceration, I think a 1 centimeter laceration to his
11  forehead that was sealed with Dermabond, the kind of glue that
12  they use to close small lacerations, that sort of thing.
13          THE COURT:  And doesn't show any other head injury?
14          MR. BEATH:  No.
15          THE COURT:  Okay.  Let's set a schedule for discovery.
16  And you are welcome to continue talking about settlement, of
17  course.
18          Mr. Dejesus, you're welcome to make an application for
19  counsel.  Let me just inform you that even if I invite such an
20  application it doesn't mean that the application would
21  necessarily be granted or if I do grant it, it doesn't
22  necessarily mean you would get counsel because this is a civil
23  case, not a criminal case and, unlike in the criminal area,
24  just because a person cannot afford counsel doesn't mean that
25  they are entitled to appointment of counsel.  So if you ask for

1    an attorney you should set out for me why you think an attorney
2    would be a good idea in this case, which should say more than
3    just, you know, you're a lay person.  I understand that you're
4    not a lawyer.  But you should set out the efforts you've made
5    to find a lawyer on your own, if there are any special issues
6    here other than the fact that you're incarcerated that might
7    make a difference.  For example, you seem to speak and
8    understand English.  Sometimes people have language barriers,
9    mental health difficulties, you know, they're in isolation,
10   there are various issues that make it harder to do things.
11            So if there are any particular circumstances, let me
12   know what they are.  And if I agree that counsel is a good
13   idea, I will ask the pro se office to see if they can find a
14   lawyer who is willing to take the case on without charge.  They
15   may or may not be able to do that.
16            So I generally don't hold up a case for this.  I
17   generally would set a schedule and let it go forward and have
18   conferences as appropriate to try to make sure things are going
19   smoothly.
20            I'd like you to get the materials that the city is
21   planning to produce to you, give you a chance to take a look at
22   those, and then let you ask for anymore documents that you
23   think you need in order to pursue your claim.  And you can also
24   serve what's called interrogatories, which are written
25   questions asking for answers from a particular defendant.  So

1   if you want to ask this defendant to state where he was --
2   excuse us here -- to state where he was at a certain time, or
3   ask questions about his report or anything, you can do that in
4   a discovery request.
5              Ordinarily parties have the opportunity in what we
6   call a discovery process to take depositions, which are
7   pretrial testimony from the other side.  If the case goes
8   forward, the defendant will surely want to take your deposition
9   which would mean sitting you down at a table and asking you
10  questions under oath.
11             Plaintiffs have the right to do that also but
12  sometimes when you're incarcerated it becomes difficult so I
13  usually allow a little more leeway on those written questions,
14  those written interrogatories than I ordinarily would because
15  they can help substitute for a deposition if a deposition is
16  difficult to do.  Okay.
17             So I'll also let defendant's counsel know that before
18  you object to interrogatories as beyond the scope of initial
19  interrogatories or something.
20             MR. BEATH:  Sure.
21             THE COURT:  Let's see if they can possibly substitute
22  for a deposition.
23             MR. BEATH:  Okay.
24             THE COURT:  And looking at the calendar, if those
25  initial disclosures by the city go out this week, let's assume

1  that plaintiff has them sometime next week, takes a couple of
2  weeks to look at them and figure out what else he needs and
3  gets out some questions, maybe I should have initial document
4  requests and interrogatories due out the door by May 10.
5           How does that sound?
6           MR. BEATH:  That's fine for defendants.
7           MR. DEJESUS:  That's fine for me too.
8           THE COURT:  So by May 10 you serve your initial
9  document requests if you have any and your initial
10 interrogatories if you wish to.  If the documents you get are
11 the universe you think you need, that's fine.  If you think you
12 need something else you can ask for it.  Okay.
13          So I'll ask both sides to serve initial requests by
14 then.
15          Then is it possible you may want to be amending your
16 complaint to add any different party or to add any claims or
17 anything like that, Mr. Dejesus, or do you think you --
18          MR. DEJESUS:  No, your Honor.
19          THE COURT:  Do you think you got the right defendant
20 and the right claim?
21          MR. DEJESUS:  Yes.
22          THE COURT:  I'm going to put a deadline in place to
23 amend anyway, just in case.  If you really don't think there's
24 a need, you can let that date come and go and not worry about
25 it.  If you think:  Oh, wait, I should have added this claim or

1  something, then this is going to be a date by which you need to
2  propose an amended complaint and make a motion for leave to
3  amend, okay.
4          MR. DEJESUS:  Okay.  No problem.
5          THE COURT:  So how about end of June for that.  That
6  will give you a chance to get back answers to what you serve.
7  We'll make it June 28.  That's a Friday.  I'm trying to make
8  things due on Fridays.
9          And then deadline for all discovery.  I'm assuming if
10 a deposition is needed it could be done in May, June or
11 certainly by July, counsel?
12         MR. BEATH:  Yes.  I think that's right.  And I
13 don't -- at least from my understanding of the case right now I
14 don't anticipate that there are any witnesses to the use of
15 force who would have to be deposed.  So I think maybe if we can
16 have until mid July just to make sure, you know, in case
17 anything comes up in discovery if there's any lag because of
18 the need to mail the paperwork, we'd have time to do the
19 deposition still.
20         THE COURT:  July 17.
21         MR. BEATH:  Sure.
22         THE COURT:  For the close of discovery.
23         So Mr. Dejesus, do you know if there are any
24 witnesses?
25         MR. DEJESUS:  No, ma'am.

1            THE COURT:  There aren't any or you don't know?
2            MR. DEJESUS:  Well dealing with inmates or --
3            THE COURT:  Inmates or staff.
4            MR. DEJESUS:  I have a couple of inmates that
5    witnessed.  But right now I'm trying to locate them right now
6    at this moment.
7            THE COURT:  Do you know their names?
8            MR. DEJESUS:  I don't have my file in front of me
9    right now.
10           THE COURT:  All right.  Well I'm going ask you to do
11   this.  I'm going to ask you to identify these potential
12   witnesses when you go back and you have your file.  Send a
13   letter to Mr. Beath.
14           You have his address, right?
15           Mr. Dejesus?
16           MR. DEJESUS:  Yes, ma'am.
17           THE COURT:  You have his address?
18           MR. DEJESUS:  Yes, ma'am.
19           THE COURT:  Counsel's address.
20           Okay.  Send a letter identifying the witnesses.
21           And Mr. Beath, I'm going to ask you, assuming you get
22   names of people, to try to help track down where they are.
23           MR. BEATH:  Sure.
24           THE COURT:  Because inmates tend to move around.
25           MR. BEATH:  Right.

1        THE COURT:  And one of the hardest things can be
2  finding people and being able to be in contact with them.
3        MR. BEATH:  Yes.
4        THE COURT:  If you really do have names of witnesses,
5  Mr. Dejesus, and they are not in the same facility as you are
6  anymore, put that as part of a counsel application if you make
7  one because that can be a circumstance where it may be very
8  helpful to have an attorney who can travel and who can meet
9  with a witness and interview a witness.  Okay?
10        MR. DEJESUS:  Okay.
11        THE COURT:  Who can take a deposition of a witness if
12  need be, or defend a deposition if need be.
13        MR. DEJESUS:  Okay.
14        THE COURT:  Or be present at a deposition, at least,
15  if need be.
16        So I'm going to set a follow-up date -- actually let
17  me put a date on that.
18        Do you have names back where you have your papers --
19        MR. DEJESUS:  Yes.
20        THE COURT:  -- in your cell?  All right.  If you could
21  get that letter out this week.
22        MR. DEJESUS:  I will.
23        THE COURT:  Okay.
24        And then if you could respond, Mr. Beath, to my
25  request to try to identify where these people are.

1           MR. BEATH:  Yes.
2           THE COURT:  About how long do you think that would
3    take you?
4           MR. BEATH:  If these people are still incarcerated in
5    either city or state custody it won't take -- it shouldn't take
6    any time at all.  I should be able to find that out within days
7    of receiving their names unless we're dealing with exceedingly
8    common names and I can't distinguish who is he.
9           THE COURT:  Well Mr. Dejesus, these are people
10   obviously who were being held at the same place as you were
11   being held at the same time if they were witnesses, right?
12          MR. DEJESUS:  Yes.
13          THE COURT:  Do you have any other information about if
14   they were transferred anywhere where they might have gone?
15          MR. DEJESUS:  I can't tell you.  I don't really know.
16          THE COURT:  Were they housed in your housing area?
17          MR. DEJESUS:  Yes.  They was housed in the same area
18   where the incident happened.
19          THE COURT:  So that should help, Mr. Beath.  Even if
20   they have common names, at least you can pin them down to some
21   place at some time.
22          MR. BEATH:  Definitely.  I don't think it will be any
23   problem getting a response, identifying where they are
24   presently, within a week of getting those names, certainly.
25          THE COURT:  Okay.

1            MR. BEATH:  And to the extent I'm unable to I can
2     respond saying that there is no indication -- whatever.
3            THE COURT:  Whatever the problem is.
4            MR. BEATH:  I can explain whatever shortcoming there
5     was in having difficulty and maybe we can start working around
6     that at that point.
7            THE COURT:  Send me a copy of your response so I know
8     what's happening on that.
9            MR. BEATH:  Okay.
10           THE COURT:  Let me set a follow-up telephone call date
11    to see how it's going, how everything is going, by -- I'm
12    thinking sometime late May or early June at the latest.
13           MR. BEATH:  I think for defendants maybe late May
14    would be fine.
15           THE COURT:  How about May 30?  I have another call
16    that morning that will also need a reporter.  How about 10:30?
17           MR. BEATH:  That's great for defendants.
18           THE COURT:  I have another call like this one on at
19    10:00.  So if that runs a little bit late bear with us.  It
20    might slip a little bit, okay.
21           MR. BEATH:  Okay.
22           THE COURT:  But if I schedule them back to back maybe
23    I can take advantage of the same court reporter on the same
24    day.
25           MR. BEATH:  Right.

1           THE COURT:  So with respect to counsel application,
2    Mr. Dejesus, do you have a form or do you need one?
3           MR. DEJESUS:  No.  Your Honor, I was going to say that
4    I have, you know, I've been talking to this counsel named
5    Jonathan Fink.  And we've been in the process of you know --
6    he's willing to take my case but I just got moved down here
7    from Clinton to Downstate.  So I'm -- I just wrote him a letter
8    and I'm just waiting for his response.
9           THE COURT:  With respect to settlement, since you've
10   been talking about that already, I'm assuming the city will be
11   in touch with you directly, may have some conversations with
12   you directly.  If you are comfortable settling the case you
13   have a good sense of what you're prepared to take and the city
14   offers you something that you think under the circumstances is
15   reasonable, by all means you -- you know you can agree to
16   settle the case and then counsel will then let me know that
17   there's a deal in principle.
18          If you think you'd benefit from counsel and you want
19   to see if an attorney can show up and talk to you about the
20   value of your case before settling, whether attorney counsels
21   you that a settlement is too low or that a settlement is high,
22   you know, that your claim is not really worth as much or that
23   your claim is worth more, either way, that's up to you to
24   decide whether that's something you want to do now or something
25   you want to hold off on.

1              I always urge settlement talks.  And early ones are
2    great.  But you know you shouldn't -- either way you shouldn't
3    feel either overly confident or pressured to do something low.
4    You should think it through.  If you're comfortable with it,
5    great.  And if you're not and there's an attorney you can speak
6    to, you should.  Okay.
7              MR. DEJESUS:  Okay.  I'm fine with that.
8              THE COURT:  All right.  So I'll talk to you again on
9    May 30 at 10:30.  Hopefully it won't slide until 11:00 but we
10   won't forget about you.  It's on my calendar.
11             Anything else for today?
12             MR. BEATH:  Nothing from defendant.
13             THE COURT:  Anything from plaintiff?
14             MR. DEJESUS:  No, ma'am.
15             THE COURT:  Thank you.
16             (Adjourned)